## Bradley v. Radnor Township

*Harry F. Dunn, Jr.*, for plaintiffs.

*Sondra K. Slade*, for township.

*John Butterworth* and *John F. Cramp*, for intervenor.

DEFURIA, October 21, 1971.—This matter is before the court on plaintiffs' complaint, in the nature of an appeal, pursuant to the provisions of the First Class Township Code, wherein plaintiffs challenge the validity of Radnor Township Ordinance No. 1405, adopted by a four-to-three vote on October 3, 1969, which ordinance purports to rezone premises of the intervenor located at 145 Strafford Avenue, Wayne, from R-4 residential district to C-O commercial office district.

After the filing of plaintiffs' complaint, in October of 1969, the township filed its answer, and thereafter moved for summary judgment raising, substantially, the same arguments now presented to this court. On

June 10, 1970, Judge Gorbey dismissed the township's motion.

Testimony and evidence were presented thereafter before deFuria, J., on September 22, 1970, and the record closed.

The merits of the purported rezoning are not before the court. The sole issue is the legality of the method adopted by the township in passing the ordinance.

Two fundamental procedural issues have been raised:

(1) that the township failed to give legal notice of the meeting at which the ordinance was adopted; and

(2) that the township failed to adopt the ordinance by a two-thirds vote of the township commissioners.

The plaintiffs filed this action under section 1502 of the First Class Township Code of June 24, 1931, P. L. 1206 as amended, 53 PS 56502, which limits the consideration of this court to defects in the process of enactment of the ordinance. Substantive issues concerning the ordinance's validity are beyond the court's jurisdiction; Roeder v. Hatfield Borough Council, 439 Pa. 241 (1970).

All parties agreed, of record, that the propriety of plaintiffs' direct appeal to this court[1] was not in issue.

*Did the Township Give Legal Notice of the Meeting at which the Ordinance Was Adopted?*

The requirement of notice of meetings is covered by the Public Officers Act of June 21, 1957, P. L. 392, sec. 3, September 28, 1959, P. L. 987, sec. 1, 65 PS 253.

---

[1] Instead of appeal to the Zoning Hearing Board, as required by the Pennsylvania Municipalities Planning Code of July 31, 1968 (Act no. 247) art. IX, 53 PS §10910. The Roeder case, supra, in any case, confirms the propriety of a direct appeal under the Township Code for this purpose.

This act provides that "Every board shall hold all public meetings, at specified times and places, of which public notice shall be given." A notice of special meetings shall be advertised or prominently displayed by posting at the principal office of the body holding the meeting or at the public building at which the meeting is to be held, at least 24 hours prior to said meeting.

Plaintiffs averred in their complaint, paragraph 3, a and b, that the township had failed to give proper notice of the time and place of the public hearing *at which the ordinance was adopted.*

The township failed to deny these allegations, but merely denied that notice of "the public hearing" was not given. The "public hearing" meeting was held on June 2, 1969, and was the public meeting to consider rezoning. Notice of this meeting had been given as required by law, but the allegation concerned the meeting at which the ordinance was adopted, on October 3, 1969, four months later.

The township, therefore, admitted in its record pleadings, by failure to deny, that it had not given notice of the adopting meeting.

Plaintiffs further averred, 3c, that the township "intentionally misled" plaintiffs and others at the September 22, 1969, meeting by publicly announcing that action on the proposed ordinance would be deferred until the next regular meeting to be held on Monday, October 20, 1969; that, instead, without notice to plaintiffs or any other township residents, the commissioners adopted the ordinance on October 3, 1969.

The township again failed to deny this allegation, merely answering that "there is no requirement that anyone be notified as to when a proposed ordinance

would be adopted," and "that the only requirement is that a public hearing be held, which, in fact was held."

So, again, in its pleadings of record, the township admits that no notice of the meeting of October 3, 1969, was given.

At the court hearing, the township's counsel again admitted that no notice of the October meeting had been given, advancing the claim that such notice was not required, citing Penn Wynne v. Lower Merion Township, 181 Pa. Superior Ct. 524 (1956). The Wynne case is not in point at all.

In Penn Wynne, the meeting had been duly held *after due notice.* The court merely held that a special notice that at this meeting the proposed ordinance, previously duly advertised and discussed at a public meeting, would be adopted was not necessary. This holding follows from the principle that at a lawful meeting, i.e., one of which due notice was given, all lawful business coming before the board may be transacted.

The township did offer its minutes of the October 3rd meeting in a feeble attempt to show some form of notice, which it had previously admitted of record and in court had never been given. The minutes show that the president of council thought it advisable, in view of the long pending petition to rezone, to call a special meeting as quickly as possible; that he had decided to hold the meeting on a Friday night in order to give local newspapers, which are distributed on Thursday, the opportunity to carry a notice of the meeting so that everyone interested would be made aware.

The minutes of the October 3rd meeting fail to show any reference to a notice of this special meeting. Nor was any publication notice referred to or offered.

Thus, again, from the record, the township's failure to give notice of the October 3rd meeting appears.

This extended discussion is necessary because plaintiffs alleged that the township *intentionally* changed the date of the adopting meeting and failed to give notice thereof. It also has a bearing on the second issue: that 20 percent of abutting residents had protested in writing and a two-thirds majority note was needed.

The Public Notice Act was designed to prevent situations, such as here, from developing. Public actions must be taken publicly after due notice. Public officials must not only act properly in full view of the people, but must also avoid the appearance of impropriety. Else, public confidence is destroyed.

The vice the law was aimed against was not only secret and executive sessions at which actions were taken, but also hastily called meetings of which the citizens knew nothing.

The actions of the township qua notice prompted the trial judge to remark at the hearing that the situation was malodorous. The brief of the township takes umbrage, but merely pleads in extenuation that "if the Township failed in some obscure manner to meet a hitherto unrecognized statutory requirement . . . its failure was a technical and not a venal one."

The question of venality was not raised by the court. The excuse offered is feeble, indeed. The statute is not obscure; its purpose is salutary and necessary; it has been in existence for 11 years. It is not only the innocent who protest. Actae inconsuet semper inducant suspicionem.

The highly improper attempt of defendant to offer through the attorneys for the intervenor, material on this issue to the trial judge, more than two weeks after the case and record were closed, is noted but not further commented upon.

The court, therefore, finds that the township failed to follow the legislative requirement to give legal notice of its meeting of October 3, 1969, at which it purported to adopt ordinance no. 1405. This failure, violative both of the statute and of due process, renders the ordinance illegal, null and void and of no effect. See Pumo v. Norristown Borough, 404 Pa. 475, 172 A. 2d 828 (1961).

*Was a Two-thirds Majority Vote of the Township Commissioners Necessary?*

The Township Zoning Ordinance, section 2104, provided for passage of a rezoning ordinance, where 20 percent of the abutting owners had protested in writing, only by a two-thirds affirmative vote of the commissioners. The township agrees that this provision is in effect, despite the passage of the Municipalities Planning Code, which does not provide for such protests.

On June 2, 1969, it is admitted that 20 percent or more of abutting owners did file a protest. A public hearing was held on that date for the specific purpose, as required by law, of considering the proposed rezoning amendment.

At subsequent meetings of the commissioners, held on September 16th and September 22nd, the amendment was also discussed.

At the October 3rd meeting, when the ordinance was purportedly adopted, the township claims that the percentage of objectors was now less than 20 percent because some of the protesters had "withdrawn" their protest.

If such "withdrawal" is permitted, months after the public hearing, aside from legal considerations, a situation conductive to chicanery, undue persuasion, and destruction of public confidence in the actions of public officials would obtain.

A prime objective of the law is finality. The very purpose of the 20 percent provision is to record the protest of record. The purpose of the public hearing is to air divergent views, and to give protestors a chance to withdraw, as well as to permit nonobjectors to now object.

The township admits that 20 percent did object initially. It claims that less than 20 percent were objecting at the time of adoption. But nowhere in the township's minutes does it appear who these withdrawers were, and how and when they did so.

If some protestors had withdrawn, why weren't the remaining protestors notified so that they could attempt to obtain more objectors? The question illustrates the vice of this procedure.

Under all the circumstances, we hold that 20 percent or more of abutting owners objected of record; that no withdrawals from that percentage appears of record; that any withdrawals, if made, were made after the end of the public hearing on June 2, 1969, and thus were ineffective; that a two-thirds majority vote of the commissioners was not obtained; that the ordinance was therefore illegally adopted, and of no effect.

For the salutary reasons mentioned and for reasons of finality, we hold that a protestor of record may withdraw no later than at the end of the public hearing held to consider the proposed rezoning.

## ORDER

And now, October 21, 1970, after hearing, it is ordered and decreed that ordinance no. 1405 of the Township of Radnor, Delaware County, Pa., was improperly adopted and is invalid, unconstitutional, null and void, and of no effect; and its enforcement or implementation is herewith prohibited.